**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JERRY BEAL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 20 C 2797** |
| ) | |
| **PACIFIC RAIL SERVICES, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jerry Beal has sued his employer, Pacific Rail Services, Inc., for violations of Title VII of the Civil Rights Act of 1964. Beal alleges that Pacific Rail subjected him to a hostile work environment and discriminated against him because of his race. Pacific Rail has moved for summary judgment on all of Beal's claims. For the reasons below, the Court grants Pacific Rail's motion.

## Background

The following facts are undisputed except where otherwise noted. Pacific Rail is a railroad contractor that manages the loading process at rail yards across the United States. Beal is African American and has been employed with Pacific Rail since 2001, and he currently works as a crane operator.

Over the course of his employment, Beal has been involved in several disputes with both Pacific Rail and his union. Pacific Rail terminated Beal in 2008 for insubordination but reinstated him two years later as part of a settlement agreement among Beal, his union, and the company. Beal also received a $1,000 settlement from

Pacific Rail in 2011, but the basis for that settlement is unclear.  In 2012, Beal filed a wrongful discharge claim against Pacific Rail that was ultimately dismissed, and in 2014 he brought a discrimination charge against his union with the National Labor Relations Board.  Shortly after suffering a workplace injury in 2016, Beal filed a claim with the Occupational Safety and Health Administration against Pacific Rail.  That claim was also dismissed.

Steven Whalen, a white coworker of Beal's, acted aggressively toward Beal while on the job in June 2016.  Beal and Whalen were both driving for work-related purposes, and Whalen repeatedly steered his hostler truck to cut Beal off.  This forced Beal to swerve out of the way to avoid an accident.  Whalen also yelled at Beal over the trucks' radio communication system and stated that Beal should be scared.  Whalen did not reference Beal's race during this confrontation.

Pacific Rail investigated the incident after Beal reported it to his manager.  It interviewed and collected written statements from Whalen and other employees, and it also attempted to interview Beal.  Though Beal refused to answer any questions without counsel, Pacific Rail determined from other evidence that Whalen was at fault.  It issued Whalen a "last chance" letter, which prohibited him from retaliating against Beal and from communicating with him unless necessary for work.  The letter also stated that Whalen would be disciplined and possibly terminated if his behavior continued.

Pacific Rail also issued a letter to Beal in which it explained that other evidence substantiated his allegations against Whalen.  The letter stated that Pacific Rail could not conclude that Whalen's actions were based on Beal's membership in a protected class.  Rather, Pacific Rail believed that Beal and Whalen's conflict resulted from

Whalen's previous testimony in an arbitration between Beal and the company.  The letter instructed Beal to have minimal communication with Whalen and to inform the company if Whalen harassed him further.  It apparently is not possible for Beal and Whalen to avoid seeing each other because of the size of the rail yard, but there have been no further confrontations between them since Pacific Rail's investigation.

In early 2017, an unknown individual left multiple copies of a Facebook post by a white employee, Jim Wilkie, in the employee locker room.  Wilkie wrote the post while he was temporarily working in Georgia, and former employee Rodney Strauss responded to it on Facebook as follows:

> **WILKIE:** some people here are really starting to work my last fuckin nerve. Motherfuckers can't be that stupid, can they? This nigga need to get back home to someone, been too damn long
>
> **STRAUSS:** Lets handle that nigga will
>
> **WILKIE:** you always got my back hoss

Def.'s Local Rule 56.1(a)(3) Stat., Ex. K, Jim Wilkie's Facebook post (dkt. no. 46-3).

Upon learning of the Facebook post from another employee, Pacific Rail investigated the incident.  Wilkie admitted that he wrote the post and stated that he had intended for it to be a communication between himself and Strauss.  Wilkie also stated that he used the racial slur in referring to himself and his frustration at staying in Georgia.

Pacific Rail granted Wilkie's request to apologize to his coworkers for the post, and it suspended him for three days for violating its anti-harassment policy.  The company was unable to determine which employee disseminated copies of Wilkie's post in the employee locker room.  Beal spoke to two managers about Wilkie's post and

expressed his belief that Pacific Rail was not properly disciplining Wilkie, but he did not report this to the particular supervisors designated by the company's policy. Neither Beal nor Pacific Rail experienced any further issues with Wilkie after his suspension.

In March 2017, Terminal Manager Mark Bolz issued Beal a warning for taking an unauthorized forty-minute break. The parties dispute whether Pacific Rail allowed Beal to review the video evidence of this incident. Beal admitted that the warning did not lead to further discipline or a suspension, but he believes Pacific Rail may have docked his pay for those forty minutes (he offers no evidence to support this, however). In the section of Beal's EEOC charge concerning this incident, he alleged that Pacific Rail treated Whalen and Wilkie more favorably under similar circumstances. During his deposition, Beal clarified that he was referring to the driving incident and the Facebook post when he mentioned Whalen and Wilkie. Pacific Rail issued similar warnings to at least five other employees for the same violation, four of whom were not African American.

In July 2017, Beal received a $1.50 increase in his hourly pay. The parties dispute whether he qualified for the pay increase earlier, in April 2017. The only evidence of Beal's qualifications is a July 20, 2017 certificate stating that he completed the necessary training. Beal testified that he heard rumors of his coworkers receiving pay raises earlier than he did, but he was unable to identify those employees or state how many such individuals there were.

In August 2017, Beal filed a charge of discrimination with the EEOC and IDHR. He claimed that he suffered harassment because of Wilkie's Facebook post and discrimination because of the verbal warning and allegedly belated pay increase. Beal

did not specifically mention the driving incident with Whalen in his EEOC charge.  The agencies issued a right to sue letter in January 2020, and Beal timely filed this suit in April 2020.

## Discussion

To succeed on its motion for summary judgment, Pacific Rail must show that "there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When deciding a summary judgment motion, courts must "construe all inferences in favor of the party against whom the motion under consideration is made."  *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted).  Although "the mere existence of *some* alleged factual dispute between the parties" is insufficient to preclude summary judgment, courts should apply the standard with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility.  *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000) (quoting *Anderson*, 477 U.S. at 247).

## A.    Racially hostile work environment claim

In count 1 of the complaint, Beal alleges that Pacific Rail violated Title VII by subjecting him to a hostile work environment because he is African American. "Subjecting an employee to a hostile work environment counts as an adverse action ('unlawful employment practice') within the meaning of Title VII's prohibition of race

discrimination in 42 U.S.C. § 2000e-2(a)." *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019). Specifically, a plaintiff must show that "(1) he was subject to unwelcome harassment; (2) the harassment was based on race (or another protected category); (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." *Id.* (quoting *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018)).

When a plaintiff "claims coworkers alone were responsible for creating a hostile work environment, he must show that his employer has been negligent either in discovering or remedying the harassment." *Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004). An employer is not liable "if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring," and "a prompt investigation is the 'hallmark of a reasonable corrective action.'" *Porter v. Erie Foods International, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (internal citations omitted). "In assessing the corrective action, our focus is not whether the perpetrators were punished by the employer, but whether the employer took reasonable steps to prevent future harm." *Id.* at 637. "There is no question that a 'stoppage of harassment shows effectiveness,'" but it "is not the sole factor to be considered" because an employer's response "may be [reasonably] calculated even though the perpetrator might persist." *Id.* (quoting *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir.1998).

The parties do not dispute that Beal experienced unwelcome harassment, but even if he can show that the harassment was because of his race and sufficient to

create a hostile work environment, Beal has failed to establish any basis for employer liability.  Beal does not dispute that Pacific Rail promptly investigated both the driving incident and the Facebook post and reprimanded the employees responsible.[1]

The record shows that as part of the investigation into the driving incident, Pacific Rail gathered documents, interviewed Whalen and other employees, and issued Whalen a "last-chance" letter.  The letter instructed Whalen not to communicate with or retaliate against Beal, and it warned that he would be disciplined and possibly terminated if his behavior continued.  As for the Facebook post, Pacific Rail confirmed that Wilkie had written it, but it was unable to determine which employee left copies in the locker room.  The company allowed Wilkie to publicly apologize to the other employees for the post, and it suspended Wilkie for three days for violating the anti-harassment policy.  Because Pacific Rail acted upon learning of both incidents and disciplined the responsible parties, its actions are sufficient to constitute the "prompt investigation" that the Seventh Circuit has held is a "hallmark of a reasonable corrective action."  *Porter*, 576 F.3d at 636.  In addition, Beal reported no further issues with either Whalen or Wilkie after the investigations concluded.  The absence of further harassment alone may not be dispositive, but combined with the company's prompt

---

[1] As Pacific Rail points out, Beal did not mention the driving incident in his EEOC charge.  The driving incident does not "describe the same conduct and implicate the same individuals" as the incidents Beal that does mention in his EEOC charge, as none of those other events involved Whalen.  *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002).  Beal therefore cannot base his Title VII claim on this incident because it is not "'like or reasonably related' to the EEOC charges," *id.*, and he fails to address this issue in his response brief.  He argues only that courts must account for the overall context of the workplace in evaluating a hostile work environment claim, but this incident would not support his claim even if the Court were to consider it.

investigation and discipline of the culpable parties, it reflects that Pacific Rail's actions were reasonably likely to prevent future harassment.

Beal argues that there is a genuine issue of material fact regarding whether Pacific Rail's actions were sufficient. He contends that the company ought to have transferred Whalen to ensure physical separation, punished Wilkie more harshly, and investigated how African American employees felt about the Facebook post. Yet the basis for employer liability depends "*not* [on] whether the perpetrators were *punished* by the employer, but whether the employer took *reasonable steps to prevent future harm*." *Porter*, 576 F. 3d at 637 (emphasis added). Beal states that Whalen's conduct and continued presence in the rail yard caused him to feel unsafe, but he offers no viable explanation of how a reasonable jury could find that Pacific Rail's actions were negligent or unreasonable given that Beal had no further confrontations with Whalen or Wilkie. Without more, Beal's contention that the company should have done more does not establish the existence of a genuine factual dispute regarding its liability. The Court therefore grants summary judgment in favor of Pacific Rail on this claim.

## B.    Race discrimination claims

To succeed on a Title VII claim, a plaintiff must first establish a prima facie case by showing that (1) he is a member of a protected class, (2) he met the defendant's legitimate expectations, (3) he suffered an adverse employment action, and (4) a similarly situated individual outside of the protected class received more favorable treatment. *Khowaja v. Sessions*, 893 F.3d 1010, 1014-15 (7th Cir. 2018); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff makes such a showing, the burden shifts to the employer to provide a "legitimate,

nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the burden shifts back to the plaintiff to present evidence that the stated reason is a pretext for discrimination. *Id.* at 804.

The parties do not dispute that Beal is a member of a protected class and that he was meeting legitimate expectations. Beal argues that the warning about his unauthorized break and the delayed pay raise were adverse employment actions, but even if that is the case, his claims cannot succeed because he has not offered evidence from which a reasonable jury could find that a similarly situated non-African American employee was treated better.

Beal contends that Pacific Rail discriminated against him in issuing a warning for taking an unauthorized forty-minute break, but he provides no evidence that would allow a finding that the company treated other employees better. Beal cites only to the statement in his EEOC charge that Whalen and Wilkie were "treated more favorably under similar circumstances." Def.'s Local Rule 56.1(a)(3) Stat., Ex. B, Charge of Discrimination, at 2 (dkt. no. 46-2). During his deposition, however, Beal explained that he was referring to Whalen and Wilkie solely in reference to the driving incident and Facebook post, and "not that—the 40-minute break, whatever it is." Def. Ex. BB, Beal Dep., at 69:8-10 (dkt. no. 46–4). Beal also does not dispute that at least five other employees were similarly warned for taking unauthorized breaks, four of whom were not African American. He argues that Pacific Rail has not shown that those employees were not similarly situated, but as the plaintiff, Beal bears the burden of offering evidence that would permit a reasonable jury to find they were. *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 723–24 (7th Cir. 2018) ("Ultimately, plaintiff bears the burden of

9

showing the individuals he identifies are similarly situated . . . . Because plaintiff fails to do so, his comparator argument must fail."). Because the only "evidence" of differential treatment is an allegation that Beal himself admits was mistaken, there is no basis for a reasonable jury to find that Pacific Rail discriminated against him in issuing the warning.

As for the pay raise, the parties dispute exactly when Beal qualified for the increase in his hourly wage. Yet even if he qualified for the raise some number of months before he received it, the only evidence of differential treatment he provides is his testimony that he heard rumors of other employees receiving the pay increase earlier. Beal was unable to identify any of these employees or offer evidence that they were similarly situated and outside his protected class, and he cites to no evidence other than rumor to support his contention. Although "uncorroborated, self-serving testimony may suffice to prevent summary judgment in some circumstances, [such] beliefs cannot create genuine issues of material fact when those beliefs lack a foundation of personal knowledge." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 395 (7th Cir. 2010). Beal's claim therefore cannot succeed, as he has not offered evidence that would permit a finding that the timing of his pay raise constituted discrimination because of his race.

### Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 44] and directs the Clerk to enter judgment in favor of the defendant and against the plaintiff.

Date: December 20, 2022

_____
MATTHEW F. KENNELLY
United States District Judge